IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| WONDALYN SHANTE BAILEY, | : | CASE NO. 20-62468-SMS |
| | : | |
| Debtor. | : | JUDGE SIGLER |
| | : | |
| | : | |
| MIDFIRST BANK, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| v. | : | |
| WONDALYN SHANTE BAILEY, | : | |
| S. GREGORY HAYS, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

### <u>NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Movant has filed documents with the court to obtain relief from the automatic stay.

**<u>YOUR RIGHTS MAY BE AFFECTED.</u>  You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. <u>If you do not have an attorney, you may wish to consult one.</u>**

If you do not want the court to grant relief from the automatic stay or if you want the court to consider your views on the motion, then you or your attorney shall attend the hearing scheduled to be held on

**<u>March 31, 2021 at 10:00 a.m.</u> at the United States Bankruptcy Court, 75 Ted Turner Drive S.W., Courtroom 1201, Atlanta, Georgia 30303.**

***<u>*** Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone ***</u>***

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is: Clerk, 75 Ted Turner Drive S.W., Suite 1340, Atlanta, Georgia 30303.  You must also send a copy of your response to the undersigned at the address stated below.

Dated this:   2/26/2021

*/s/John D. Schlotter*

John D. Schlotter, GA BAR NO. 629456
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6453
John.Schlotter@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| WONDALYN SHANTE BAILEY, | ) | CASE NO. 20-62468-SMS |
| | ) | |
| Debtor. | ) | JUDGE SIGLER |
| | ) | |
| MIDFIRST BANK, | ) | CONTESTED MATTER |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | |
| WONDALYN SHANTE BAILEY, | ) | |
| S. GREGORY HAYS, Trustee | ) | |
| | ) | |
| Respondents. | | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest.  A copy of the Security Deed is attached hereto and made a part hereof.  Said real property is security for a promissory note, and is commonly known as 233 Long Drive, McDonough, Georgia 30253 (the "Property").

3.

Debtor is in default of the monthly installments pursuant to the terms of the Note.  As of February 11, 2021, Debtor is delinquent for six (6) payments of $936.25 each and one (1) payment of $964.36, for a total amount of missed payments of $6,581.86, pursuant to the terms of the Note.

4.

The unpaid principal balance, as of February 11, 2021, is $96,890.22, and interest is due thereon in accordance with the Note.  The current amount of unpaid interest on Movant's loan as of February 11, 2021 is $3,105.81.

5.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

6.

Because there may be little or no equity in the property which could benefit the Estate, the Trustee's interest should be deemed abandoned.

7.

Because the Security Deed so provides, Movant is entitled to its attorney's fees.

8.

Debtor's Schedule A/B values the Property at $159,800.00.  Upon information and belief, Movant is not aware of any other liens against the Property.

9.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any

other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/John D. Schlotter*
John D. Schlotter, Georgia BAR NO. 629456
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6453
678-281-6453
John.Schlotter@mccalla.com

BANKRUPTCY CASE NO. 20-62468-SMS

CHAPTER 7

CERTIFICATE OF SERVICE

I, John D. Schlotter, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Wondalyn Shante Bailey
P.O. Box 657
McDonough, GA 30253

Eric E. Thorstenberg                    *(served via ECF notification)*
Deighan Law LLC
Suite 101
333 Sandy Springs Circle
Atlanta, GA 30328

S. Gregory Hays, Trustee                *(served via ECF notification)*
Hays Financial Consulting, LLC
2964 Peachtree Road, Suite 555
Atlanta, GA 30305

U.S. Trustee                            *(served via ECF notification)*
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   2/26/2021   By:   */s/John D. Schlotter*
                 (date)           John D. Schlotter Georgia BAR NO. 629456
                                  Attorney for Movant

**Multistate**

## NOTE

| FHA Case No. |
| --- |

JANUARY 23, 2009
[Date]

233 LONG DRIVE, MCDONOUGH, GEORGIA 30253
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COLONIAL BANK

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED TWENTY FIVE THOUSAND ONE HUNDRED NINETY & NO/100

Dollars (U.S. $ 125,190.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of                    FOUR & SEVEN-EIGHTHS
percent (     4.8750%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the  1ST     day of each month beginning on
MARCH 01, 2009     . Any principal and interest remaining on the 1ST     day of FEBRUARY          ,     2039,
will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at
POST OFFICE BOX 1108, MONTGOMERY, AL 36101-1108

or at such place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 662.52          . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐Graduated Payment Allonge  ☐Growing Equity Allonge  ☐Other [specify]

FIRST LIEN

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

Initials: _____                                    10/95
VMP1R (0809).00
Page 1 of 3

WWW.DOCSDIRECT.COM          01/22/2009 03:48 PM          NEW LOAN

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.0000%**) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FIRST LIEN

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

Initials: _____    10/95
VMP1R (0809).00
Page 2 of 3

WWW.DOCSDIRECT.COM    01/22/2009 03:48 PM    NEW LOAN

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)     _____ (Seal)
WONDALYN BAILEY                   -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                   -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                   -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
     LAURIE MEDER
     SENIOR VICE PRESIDENT

PAY TO THE ORDER
MIDFIRST BANK
WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _____
     MICHELE SJOLANDER
     MANAGING DIRECTOR

FIRST LIEN

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (0809).00
Page 3 of 3

Pay to the order of
COUNTRYWIDE BANK, FSB

without recourse

COLONIAL BANK

Signature: _____
Printed Name: Laura R Wilk
Title: Vice President

BOOK 011210 0259

FILED IN OFFICE
02/26/2009  02:01 PM
BK:11210  PG:259-272
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT
HENRY COUNTY

Return To:
**GARY G. LAWSON**

**100 GLENDALOUGH COURT**
**TYRONE, GA 30290**

Prepared By:

**COLONIAL BANK**
**680 DOUTHIT FERRY ROAD**
**C**
**7**

GEORGIA INTANGIBLE
TAX PAID
$376.50
DATE 2/26/2009

_Barbara L. Harrison_
CLERK OF SUPERIOR COURT
HENRY COUNTY

For Recording Data

State of Georgia

## SECURITY DEED

FHA Case No.

MIN

THIS SECURITY DEED ("Security Instrument") is given on **JANUARY 23, 2009**
The Grantor is
**WONDALYN BAILEY**

and whose address is

**233 LONG DRIVE, MCDONOUGH, GEORGIA 30253**
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc., ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.
**COLONIAL BANK**

("Lender") is organized and existing under the laws of **THE STATE OF ALABAMA**                    , and
has an address of 100 **COLONIAL BANK BOULEVARD, MONTGOMERY, AL 36117**

#3

**FHA Georgia Security Deed with MERS - 4/96**
                    Amended 2/01
VMP®-4N(GA) (0509)

Page 1 of 8
VMP Mortgage Solutions, Inc.

Initials: _WB_

WWW.DOCSDIRECT.COM          01/22/2009 03:48 PM          NEW LOAN

BOOK        PAGE
011210 0260

Borrower owes Lender the principal sum of
ONE HUNDRED TWENTY FIVE THOUSAND ONE HUNDRED NINETY & NO/100
                                        Dollars (U.S. $125,190.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
FEBRUARY 01, 2039        . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of
all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this
purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors
and assigns), and the successors and assigns of MERS, with power of sale, the following described property located
in HENRY                             County, Georgia:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.

Parcel ID Number:
which has the address of 233 LONG DRIVE                                              [Street]
MCDONOUGH                      [City], Georgia 30253      [Zip Code] ("Property Address");
    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as
nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    Borrower and Lender covenant and agree as follows:
    UNIFORM COVENANTS.
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,

-4N(GA) (0509)                    Page 2 of 8                    Initials:

WWW.DOCSDIRECT.COM        01/22/2009 03:48 PM        NEW LOAN

in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

 -4N(GA) (0509)

Page 3 of 8

Initials: 

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:



VMP®-4N(GA) (0509)

Page 4 of 8

Initials: 

WWW.DOCSDIRECT.COM          01/22/2009 03:48 PM          NEW LOAN

**0 1 1 2 1 0   0 2 6 3**

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



**BOOK      PAGE**

**01210  0264**

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

 -4N(GA) (0509)                    Page 6 of 8                              Initials: 

WWW.DOCSDIRECT.COM          01/22/2009  03:48 PM          NEW LOAN

BOOK    PAGE
0 1 1 2 1 0  0265

**18. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☒ Other [Specify] * |
| ☒ Planned Unit Development Rider | ☐ Growing Equity Rider | |

                    * WAIVER OF BORROWER'S RIGHTS/CLOSING ATTORNEY'S AFFIDAVIT

VMP®-4N(GA) (0509)          Page 7 of 8          Initials: _UB_

                WWW.DOCSDIRECT.COM        01/22/2009  03:48 PM        NEW LOAN

BOOK   PAGE
0112 10   0266

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____     _____ (Seal)
                                    WONDALYN BAILEY                    -Borrower

_____     _____ (Seal)
                                                                      -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                                      -Borrower

STATE OF GEORGIA, _____ County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public, _____ County
State of Georgia

VMP®-4N(GA) (0509)                   Page 8 of 8

WWW.DOCSDIRECT.COM          01/22/2009  03:48 PM          NEW LOAN

**BOOK          PAGE**

**0 1 1 2 1 0   0 2 6 7**

```
┌─────────────────────────────┐
│ FHA Case No.                │
│                    ███████  │
└─────────────────────────────┘
```

## · PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this  23RD                 day of
JANUARY        ,  2009              , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
COLONIAL  BANK

("Lender") of the same date and covering the Property described in the Security Instrument
and located at:

                    233 LONG DRIVE, MCDONOUGH, GEORGIA 30253

                                [Property Address]
The Property Address is a part of a planned unit development ("PUD") known as

                              FAIRWAYS AT COTTONFIELDS

                        [Name of Planned Unit Development]
     PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

     A.  So long as the Owners Association (or equivalent entity holding title to common
         areas and facilities), acting as trustee for the homeowners, maintains, with a
         generally accepted insurance carrier, a "master" or "blanket" policy insuring the
         Property located in the PUD, including all improvements now existing or
         hereafter erected on the mortgaged premises, and such policy is satisfactory to
         Lender and provides insurance coverage in the amounts, for the periods, and
         against the hazards Lender requires, including fire and other hazards included
         within the term "extended coverage," and loss by flood, to the extent required
         by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this
         Security Instrument for the monthly payment to Lender of one-twelfth of the

```
███████████████         ███████████
```

FHA PUD Rider
VMP®
Wolters Kluwer Financial Services ® 2008          Initials: _MB_          VMP589U (0806).00
                                                                          Page 1 of 3


                    WWW.DOCSDIRECT.COM          01/22/2009  03:48 PM          NEW LOAN

BOOK    PAGE
0 1 1 2 1 0    0 2 6 8

yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA PUD Rider
VMP®
Wolters Kluwer Financial Services ® 2008          Initials: _MB._          VMP589U (0806).00
Page 2 of 3

WWW.DOCSDIRECT.COM          01/22/2009 03:48 PM          NEW LOAN

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
WONDALYN BAILEY          -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower


FHA PUD Rider
VMP®
Wolters Kluwer Financial Services ® 2008

VMP589U (0806).00
Page 3 of 3


WWW.DOCSDIRECT.COM          01/22/2009  03:48 PM          NEW LOAN

BOOK      PAGE

01120 0270

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 7TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 7 OF FAIRWAYS AT COTTON FIELDS SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 36, PAGES 57-59, RECORDS OF HENRY COUNTY, GEORGIA, WHICH PLAT IS BY REFERENCE INCORPORATED HEREIN AND MADE A PART HEREOF.

(09-LAW-0050.PFD/09-LAW-0050/12)

BOOK        PAGE
011210 0271

GEORGIA -

GRANTOR: WONDALYN BAILEY

LENDER: COLONIAL BANK

DATE OF SECURITY DEED: JANUARY 23, 2009

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____

_____ Notary Public

_____ (Seal)
-Grantor

_____ (Seal)
-Grantor

_____ (Seal)
WONDALYN BAILEY                  -Grantor

_____ (Seal)
-Grantor

_____ (Seal)
-Grantor

_____ (Seal)
-Grantor

VMP®-960(GA) (0307)            VMP Mortgage Solutions (800)521-7291            7/03

WWW.DOCSDIRECT.COM        01/22/2009  03:48 PM        NEW LOAN

BOOK      PAGE
**0112I0 0272**

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights.  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____                                                    _____
Notary Public                                                                                                 Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____                                                    _____
WONDALYN BAILEY

_____                                                    _____

_____                                                    _____

_____                                                    _____

_____                                                    _____

VMP®-960(GA) (0307)                    VMP Mortgage Solutions (800)521-7291                                        7/03

WWW.DOCSDIRECT.COM              01/22/2009  03:48 PM          NEW LOAN

BK: 14048 PG: 295
Filed and Recorded May-15-2015 01:41:08PM
DOC# 02015-010322
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

2015 MAY 15  AM 11: 23

This space for Recorder's use

| Property Address: | Recording Requested By: **Bank of America** | When recorded mail to: **CoreLogic** |
|---|---|---|
| 233 Long Drive | Prepared By: | **Mail Stop: ASGN** |
| Mcdonough, GA 30253-6698 | **Giang Vu** | **1 CoreLogic Drive** |
| | | **Westlake, TX 76262-9823** |
| | 4909 Savarese Circle | |
| | Tampa, FL 33634 | |

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634** does hereby grant, sell, assign, transfer and convey unto **CARRINGTON MORTGAGE SERVICES, LLC** whose address is **1610 E. ANDREW PL SUITE B150, SANTA ANA, CA 92705** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Beneficiary:           **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COLONIAL BANK, ITS SUCCESSORS AND ASSIGNS**

Made By:               **WONDALYN BAILEY**

Date of Security Deed:  **1/23/2009**

Original Loan Amount:   **$125,190.00**

Certificate of Title Number:  **ABSTRACT LAND**

Recorded in Henry County, GA on: **2/26/2009**, book **011210**, page **0259** and instrument number **004659**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
**MAY 0 9 2015**

BANK OF AMERICA, N.A.

By: _____

Juan Marcos Blanco, Assistant Vice President

Witness: _____

State of FL County of Hillsborough     John Cardona

The foregoing instrument was acknowledged before me this **MAY 0 9 2015**, by Juan Marcos Blanco, Assistant Vice President of BANK OF AMERICA, N.A., on behalf of the corporation. He/she is personally known to me or has produced _____ as identification.

Notary Public: _____  Raul L. Perez

My Commission Expires: FEB 0 5 2019

Raul L. Perez
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF196338
Expires 2/5/2019

RECEIVED IN OFFICE
HENRY COUNTY
CLERK OF SUPERIOR COURT

2015 MAY 15  AM 11: 23

BK: 14048 PG: 295
Filed and Recorded May-15-2015 01:41:28PM
DOC#: D2015-010833
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

This space for Recorder's use

Recording Requested By:
**Bank of America**
Prepared By:
**Giang Vu**

**4909 Savarese Circle**
**Tampa, FL 33634**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

Property Address:
**233 Long Drive**
**Mcdonough, GA 30253-6698**

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634** does hereby grant, sell, assign, transfer and convey unto **CARRINGTON MORTGAGE SERVICES, LLC** whose address is **1610 E. ANDREW PL SUITE B150, SANTA ANA, CA 92705** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COLONIAL BANK, ITS SUCCESSORS AND ASSIGNS**
Made By: **WONDALYN BAILEY**
Date of Security Deed: **1/23/2009**
Original Loan Amount: **$125,190.00**
Certificate of Title Number: **ABSTRACT LAND**

Recorded in Henry County, GA on: 2/26/2009, book 011210, page 0259 and instrument number 004659

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on **MAY 0 9 2015**

**BANK OF AMERICA, N.A.**

By: _____

**Juan Marcos Blanco, Assistant Vice President**

Witness: _____
State of FL, County of Hillsborough     John Cardona

The foregoing instrument was acknowledged before me this **MAY 0 9 2015**, by Juan Marcos Blanco, Assistant Vice President of BANK OF AMERICA, N.A., on behalf of the corporation. He/she is personally known to me or has produced_____as identification.

Notary Public: _____     Raul L. Perez
My Commission Expires: FEB 0 5 2019

Raul L. Perez
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF196338
Expires 2/5/2019